Doyle, J.
We are satisfied from the evidence, after carefully considering it, that the commissioners acted in good faith, under the mistaken advice and belief that ample discretion was vested in them to reject the bid of the relator, upon the information which they had. Wo are equally satisfied, that, whether any discretion is vested in them or not, they acted upon insufficient information, and to some extent incorrect information, and that they offered the relator no opportunity to p'utthem in possession of the real facts, before deciding against awarding him the contract. Wo must assume that if the commissioners, when the charges were made against Mitchell, had given him a hearing, he would have satisfied them, as he has us, that there was, in fact, no reason why this contract should not be awarded to him.
We might grant a peremptory writ in this case without saying more, were it not for the claim urged, with great earnestness, that the commissioners are vested with complete discretion, in the matter of determining who is entitled to such a contract, and that such discretion, when exorcised in good faith, will not bo reviewed by the courts, oven though the information upon which they acted was false, or that they were themselves misled by it, or that it was wholly insufficient to justify their action, if they believed otherwise.
*193 In the Darke county cases, 21 Ohio St. 311, this court, construing the act of April 27, 1869, held that:
“Where the commissioners proceed, in accordance with said act, to advertise for sealed proposals, to be filed within the time named, for the furnishing of specified labor and materials toward the erection of a court house, it is their duty to award the contract for such labor and materials to the person or persons who shall so offer the same at the lowest price, and give good and sufficient bond, to the acceptance of the commissioners, for the faithful performance of the contract; provided such price is not in excess of the preliminary.estimates required by the act.” Section 10 of the act of 1866, which is identical with section 799 R. S. requires the contract to be “ awarded to and made with the person or persons who offer to perform the labor and furnish the materials at the lowest price, and give good and sufficient bond to the acceptance of the commissioners for the faithful performance of their contract,” &c. Construing this provision, Day, J., in the cases above referred to, says, “ The statute under which the parties were acting leaves but little discretionary power to be exercised by the commissioners, but they are vested with this power as to the sufficiency of the bond required of the bidder by the act, to entitle him to have the contract awarded to and made with him. Undoubtedly this discretion must be exercised in a reasonable and proper manner.” See also Beaver v. Trustees of Blind Asylum, 19 Ohio St. 97.
These adjudications are conclusive of the question under consideration, unless they have been overruled by subsequent decisions, or the law changed since they-were made, by legislative enactment.
The contention is, that after the act of 1869, and the decision-in the Darke county cases, the legislature vested in the commissioners the complete discretion contended for by the defendants herein. That the act of May 5, 1877 (74 Ohio L. 168) required the commissioners to let 'the contract to the lowest and lest bidder, and in terms repealed all laws and parts of laws then in force inconsistent with its provisions. That to *194 determine who is the best bidder requires the exercise of a discretion by the commissioners, limited only by its exercise in good faith, in determining what is for the best interest of the public. That this law being in conflict with sec. 10 of the act of 1869 must, have the effect of repealing it. Being the latest expression of legislative will, it must govern.
The case of State v. Commissioners of Shelby Co., 36 Ohio St. 326, is relied upon to sustain this view.
Both of these laws were carried into the Revised Statutes, with some changes made in the act of 1877, but without change in the act of 1869. The act pf 1877, as amended, is now sec. 794 and sec. 10 of the act of 1869, is now sec. 799, R. S. Is. there any irreconcilable conflict between the two ? It is the duty of the court to so construe them as to give each full force and effect, if it can be done without violence to established rules of construction or the manifest legislative intent.
By the act of March 3, 1831 (2 S. & C. 1228), the commissioners were authorized to receive sealed proposals, or to sell the work at public auction to the lowest bidder; and the person making the best proposal or the lowest bid, was entitled to the contract, “ if in the opinion of the commissioners he is a proper person to undertake such work.” This act, with a number of others, was repealed by the act of April 27,1869, already mentioned, and the words, giving the commissioners discretion to determine whether the bidder was a fit person to undertake the work, as also the words “ best proposal ” were omitted.
This latter law, with the construction given in the Darke county cases, was in force when the act of 1877 was passed. It must bo remembered that up to the latter date there was no obligation imposed on the commissioners to advertise for separate bids from the different trades represented in the proposed improvement.
The act is entitled “ an act to regulate the letting of contracts for the doing of public work and the better protection of mechanicsIt provided that whenever any board, &c., is authorized to contract for the erection of any building, &c., and required by law to advertise for proposals therefor, it shall be the duty of such board, &c., “to require saeparte and distinct pro *195 posáis to be made for furnishing the materials, or doing the work, or both in their or his discretion, for each separate and distinct trade or kind of mechanical labor, employment or business , necessary to be used in making such public improvement; and in no case where more than one such trade or kind of mechanical labor, employment or business shall be required to furnish the materials for and do any such work, shall any bid for the whole of the job, or any greater portion thereof than is embraced in one kind of trade or mechanical labor, employment or business, be received or considered by any such board, officer or authority, in making the award of the contract or contracts for the same. And in all cases the contracts for doing the work belonging to each separate trade or kind of mechanical labor, employment or business, or the furnishing of the materials for the same, or' both, at the discretion of the said officer, board, or other authority, shall be awarded to the lowest and best, separate bidder therefor, &c.”
In the Revised Statutes, sec. 794, this statute was so changed as to require that no bid for the whole job shall be considered “ unless the, separate bids do not cover all the work and material required, or the bids for the whole, or for two or more kinds of work or material, are lower than the separate bids in the aggregate,” and requiring the contract to be let to the lowest and best separate bidder, “unless the same is let as a whole, or to bidders for more than one kind of work as aforesaid.” The separate bidder meant by this statute is a bidder for a separate part of the work belonging to a distinct trade or division of mechanical labor.
It is apparent that, under this section, read in connection with the other sections regulating the letting of the contract, to require the commissioners to let the contract to the lowest and best separate bidders, the aggregate of such separate bids must not exceed the estimated cost of the improvement; must cover all the work and materials required, and must not exceed in amount any bid which includes the whole of the work. In other words the work shall not be let to different parties, representing different trades, if the aggregate of their bids *196 exceeds the amount of any bid which includes all of the different kinds of work to be done.
In this section 794 alone is found the words “ the lowest and best separate bidder.” Its purpose was to provide a means for bidding upon separate parts of the work, by contractors or tradesmen, without requiring them to undertake the entire job, as well as to prevent combinations to forestall competition. But the'legislature,- in the changes made in the law as enacted in section 794, wisely provided that this privilege to the separate tradesmen should not be at the expense of the public. To entitle them to separate contracts their bids must not exceed that of any bidder who includes the whole, must not exceed the estimate, and taken together must embrace'the whole work.
When the conditions exist which require the commissioners to let the contracts separately, they shall let them to the lowest and best separate bidders. But when those conditions do not exist, as in the case at bar, and the commissioners are required to let the contract for the entire job, to whom shall it be let? The law of 1869 which has been carried into the Revised Statutes without material change, and as construed in the Darke county cases sti-pra, requires the commissioners to let such, contract to the person offering to do the work at the lowest price and giving good and sufficient bond to the acceptance of the commissioners, &c.
We cannot hold that this provision is repealed by section 794. Each of these sections is in full force, and each is limited in its operation to the cases included in it when both are read together. It is no part of our duty to explain why the legis-, lature saw fit to vest in the board a greater discretion when awarding contracts to a number of persons, having no’responsibility for each other, than when awarding the same by a single contract to a person or persons responsible for the entire work.
• These' sections thus construed are reconciled and not in conflict. With this construction there is no conflict between the decisions in the Darke and Shelby county cases. ■ In the latter Case the bids were separate, for the iron work alone. The lowest bidder (to whom the contract was awarded), refused *197 to execute it, and the commissioners readvertised. The relator, who was the only other bidder under the first notice, sought to compel the commissioners to award the contract to him. The court held that they were not bound to do so. What the result would have been, if the commissioners had awarded the contract to the relator in that case, in the first instance, and refused it to the lowest bidder, we need not determine.
We agree with the holding in that case, that in so far as sections 791 and 799 are different, the provisions of the former must govern; because they relate to special cases which form exceptions to the general provisions of the latter.
It is, in our judgment, quite evident that the legislature intended by the changes in the act of 1875, found in section 791, to make it harmonize with the other sections of the chapter enacted at the same time, and that there is no occasion to resort to the rule that the latest expression of the legislative will must govern, for the reason that the sections are made to harmonize by this single expression of the legislative will.
It may be added that whatever discretion is vested in the commissioners under section 791, (which we do not determine) it certainly is not greater than that vested in them under section 799 in respect to the acceptance of the bond. In the language of J udge Day, “ undoubtedly this discretion must be exercised in a reasonable and proper manner.” We have already said that, while the defendants supposed they had a right to reject this bid, under the circumstances, that discretion, even if we found that section 791 governed their action, was not exercised in a reasonable and proper manner.

■Peremptory writ allowed.